CLARK, Guardian, etc., vs. WILKINSON and another, Executors, etc.

BURKHOLDER VS. SAME.

*January 30 — February 19, 1884.*

GUARDIANS: PENAL BONDS. *(1) Liability of sureties in additional bond of guardian. (2) Evidence of misappropriation of moneys. (3, 4) When sureties liable for interest on penalty.*

1. Where an additional bond is given as further security for a guardian's performance of his trust, the sureties thereon are liable for a failure of the guardian to account for moneys on hand at the time of the execution of the bond. In the absence of evidence to the contrary it will be presumed that there had been no misappropriation of moneys previously received, and that they were on hand when the additional bond was given.

2. Evidence that the guardian was insolvent when such additional bond was given, is not sufficient to prove that there had then been a misappropriation of moneys previously received by him as such guardian.

3. Secs. 4015, 4017, R. S., do not apply to, or limit the amount of recovery against the sureties in, actions upon guardians' bonds, such bonds not being given to the judge of the county court.

4. When the damages resulting from the breach of a penal bond exceed the penalty, if interest on such damages would be recoverable against the principal, interest upon the penalty, in addition to the full amount thereof, may be recovered against the surety. [Whether such interest should be computed from the date of the breach of the bond or from the commencement of the action, is not determined.]

APPEALS from the Circuit Court for *Grant* County.

Clark, Guardian, etc., vs. Wilkinson and another, Ex'rs, etc.

The plaintiff in the first of these actions is *John G. Clark*, the guardian of Life F. Nash and Alta B. Nash, infant heirs of Robert Nash, deceased; in the second action, *Mary C. Burkholder* (formerly *Mary C. Nash*), also an heir of said Robert Nash. The facts are stated in the opinion. The defendants, the executors of the last will of John Wilkinson, deceased, appealed in each case from the judgment of the circuit court allowing the claim of the plaintiff therein against the estate of their testator.

For the appellants there was a brief by *Carter & Cleary*, and oral argument by *Mr. Carter*. They argued, *inter alia*, that the liability of a surety on a bond is never to be extended beyond the strict letter of the obligation into which he has entered. *Vivian v. Otis*, 24 Wis., 518; *Taylor v. Parker*, 43 id., 78; *Supervisors of Omro v. Kuime*, 39 id., 468; *Smith v. Lockwood*, 34 id., 72; *Ohio v. Cutting*, 2 Ohio St., 1; *Lee v. Waller*, 3 Met. (Ky.), 61. The bond in question was the same in form as an original bond, and alluded only to such money and property as should thereafter come to the hands of the guardian. There is no proof and no presumption that the sureties knew that there were then any moneys in the hands of their principal, as guardian. Their liability, therefore, does not extend to any such moneys — certainly not to any moneys received and squandered before the bond was given. *U. S. v. Boyd*, 15 Pet., 187; *U. S. v. Linn*, 1 How., 104; *Myers v. U. S.*, 1 McLean, 493; *U. S. v. Giles*, 9 Cranch, 212; *Jeffers v. Johnson*, 3 Harr. (N. J.), 382; *State v. Hood*, 7 Blackf., 127; *Sebastian v. Bryan*, 21 Ark., 447; *Thompson v. Dickerson*, 22 Iowa, 360; *Rochester v. Randall*, 105 Mass., 295; *U. S. v. Stone*, 106 U. S., 525; *State v. Mills*, 55 Wis., 229; *U. S. v. Eckford's Ex'rs*, 1 How., 250; *Bell v. Bruen*, id., 169; *Sanger v. Baumberger*, 51 Wis., 592; *Townsend v. Everett*, 4 Ala., 607; *Postmaster v. Norvell*, 1 Gilpin, 106; *Mahaska v. Ingalls*, 16 Iowa, 81; *Bessinger v. Dickerson*, 20 id., 260; *Warren County*

*v. Ward*, 21 id., 84. Damages could not, in any case, be recovered beyond the penalty of the bond. Sedgw. on Dam., 425; *White v. Sealey*, 1 Doug., 49; *Branscombe v. Scarbrough*, 6 Q. B., 13; 8 Jur., 688; 13 L. J., Q. B., 247; *Farrar v. U. S.*, 5 Pet., 385.

For the respondents there was a brief by *Bushnell & Watkins*, and oral argument by *Mr. Bushnell*.

TAYLOR, J. These actions were brought by the respondents by filing claims against the estate of John Wilkinson, deceased, in the county court of Grant county. The commissioners appointed to pass upon the claims against such estate considered the claims presented, and allowed only a part of them. The respondents appealed to the circuit court of Grant county, and that court, after hearing the evidence, allowed the claims to the amount of $3,000, and interest thereon from the last meeting of the commissioners at which the claims might have been allowed in the county court.

The facts out of which the respondents' claims against the estate of John Wilkinson arose are as follows: October 7, 1867, William Brandon was appointed the guardian of the estate of the infant heirs of Robert Nash, deceased, of whom the respondents in this action are three; the respondent *Mary C. Nash*, now *Mary C. Burkholder*, having come of age before the commencement of these actions. On his first appointment, Brandon gave a guardian's bond in the penal sum of $1,000. Afterwards, and on November 15, 1874, the county court of Grant county ordered Brandon to give a further and additional bond as guardian, he having received more property as guardian than the penalty in the original bond. In pursuance of such order he gave an additional bond as guardian in the penal sum of $3,000. This bond was dated November 18, 1874, and approved by the county court December 1, 1874. Upon this bond, John

Clark, Guardian, etc., vs. Wilkinson and another, Ex'rs, etc.

Wilkinson, now deceased, was one of the sureties, and Justice W. Padden was the other. Brandon was guardian for Life F. Nash, Alta B. Nash, *Mary C. Nash*, George B. Nash, and Robert F. Nash, all then infant heirs of Robert Nash, deceased. The additional bond, given November 18, 1874, is in the usual form of a guardian's bond as then required by sec. 8, ch. 112, R. S. 1858, and sec. 30 of the same chapter, now secs. 3966 and 3967, R. S. 1878. The bond given under the order of the court did not on its face recite that it was given as an additional bond by order of the court. It was in the same form as though it had been given as an original bond upon the appointment of the guardian. The claim of the respondents against the estate of John Wilkinson, deceased, is founded upon this bond.

Upon the trial in the circuit court, before the judge without a jury, it was shown that the said William Brandon, as guardian of said minor heirs, had received property and money belonging to the respondents in these actions, amounting, with interest, to the sum of $3,000 and more at the date of the last meeting of the commissioners appointed to pass upon the claims against the estate of said John Wilkinson, deceased, which had not been accounted for by said guardian; and that on June 22, 1879, the county court of Grant county ordered said William Brandon, as guardian, to render an account to said court and to give further bond. On July 22, 1879, the said guardian having failed, after being duly notified to do so, to render an account or give any further bond, the said county court removed him as guardian and appointed *John G. Clark* guardian of the estate of the said minors, Life F. Nash and Alta B. Nash, and further ordered that the said William Brandon pay over to the said *John G. Clark*, as guardian of said minors, the sum of $2,709.70, which said court then found to be due from him as guardian to said minors. Upon the petition of the respondent *Mary C. Burkholder* the county court of Grant county cited the

said William Brandon to appear before said court on the 22d of July, 1879, and settle his account as guardian of said *Mary*, and pay over to her the money in his hands belonging to her. On the 22d of July, 1879, said guardian failed to appear and render his account, and thereupon said court adjudged, from the evidence of his former accounts, that there was due to said *Mary C.* the sum of $327.44, and ordered the said William Brandon to pay over that amount to her forthwith. It was admitted on the trial in the circuit court that no part of the moneys ordered to be paid by said guardian to *John G. Clark*, guardian, or to *Mary C. Burkholder*, had ever been paid.

Upon the trial in the circuit court the respondents introduced in evidence, without objection, two accounts rendered by the said guardian, William Brandon. The first was verified by said guardian on December 11, 1874, and was examined, approved, and allowed by the county court December 14, 1874. This account is made out in detail and shows that there was then in the hands of said guardian belonging to *Mary C. Nash*, now *Mary C. Burkholder*, the sum of $286.79; to Life F. Nash, $676.65; and to Alta B. Nash, $675.78. The report which accompanies these accounts reads as follows:

" GUARDIAN'S REPORT.

"*In the Matter of the Heirs of Robert Nash, Deceased.*

" To Hon. Wm. McGonigal, County Judge, Grant County, Wisconsin:

"The following report embraces all that has come into my possession of moneys or other effects belonging to said heirs, showing the amount of pension received, of twenty dollars per month, to be divided equally among the heirs until they became sixteen years of age, with the apportionment thereof to each heir. Also, additional bounty of two dollars per month to each heir until sixteen years of age, with interest at seven per cent. per annum from the time of

receiving said moneys to December 4, 1874, which includes all moneys received to date, and also due from March 21, 1867 to September 4, 1874, such interest being placed to the credit of each heir in the same proportions as the twenty dollars per month; the total expense of guardianship being deducted from the gross amount of pension at twenty dollars per month and the balance apportioned; and showing the amount remaining in my hands belonging to said heirs; also a separate account with each heir, showing the amount paid to and expended for each, with the amount due each and remaining in my hands December 4, 1874.

"WILLIAM BRANDON,

" Guardian of minor heirs of Robert Nash, deceased.

"Subscribed and sworn to before me this 11th day of December, 1874.      HIRAM GILMORE, Justice of the Peace."

The second account was rendered by said guardian March 16, 1878, showing that since the last report made, December, 1874, he had received moneys belonging to said minors, Life F., Alta B., and *Mary C. Nash*, the further sum of $901.27, including interest, and had paid out on their account $63, leaving still in his hands of this money the sum of $838.27. This report also shows that on April 3, 1876, he had paid George B. Nash, $229.80, in full for moneys received for him, and to Robert F. Nash, fifty-one cents, in full for moneys due to him.

By these two accounts it appears that said guardian had in his hands December 4, 1874, money belonging to the respondents in these actions, $1,658.25, and on March 16, 1878, the additional sum of $838.27, making in all the sum of $2,496.52. It is not pretended that any part of this sum has ever been paid over to the respondents, or to either of them, but it is admitted that it has not been so paid. This sum, with interest added, it will be seen, amounts to a considerably larger sum than the judgments rendered in these actions against the appellants.

The only contentions on the part of the appellants against the validity of these judgments are two:

1. It is contended that the surety to the guardian's bond, although given upon the order of the county court requiring the guardian to give further security as guardian, can only be held liable for the default of the guardian in paying over moneys which came into his hands as such guardian after the bond sued upon was executed, or, at most, for such additional moneys as he had in his hands as such guardian when the bond was executed; and, if the guardian had wasted the money which he had received as such guardian, or any part thereof, before the bond in question was executed, as to such money so wasted the surety could not be held liable. On the other hand, the learned counsel for the respondents contend that the surety upon a bond given as the one in question was, upon an order requiring the guardian to give additional bonds for the faithful discharge of his duties, should be held liable for his proper accounting for all moneys which had theretofore, or should thereafter, come to his hands as such guardian. Upon the evidence in this case we are of the opinion that the objection raised by the learned counsel for the appellants is not in the case, and we are not, therefore, called upon to determine it. It is evident to us that the surety on this bond is not only liable for the failure of the guardian to account for the moneys received by him as guardian after the bond was executed, but he is equally liable for all money in the hands of the guardian belonging to the wards at the time the bond was executed. And this is not seriously contended against by the counsel for the appellants; but he contends that in order to charge the surety it must be shown affirmatively that the moneys theretofore received were in fact in the hands of the guardian when he became surety, and that, in the absence of any proof on that point, it will, as to the surety, be presumed that it was not in his hands, but had been then wasted.

The case of *Myers v. U. S.*, 1 McLean, 493, is cited to sustain this rule. The learned judge who decided that case does so hold; but we are unable to find that his opinion is sustained by the other cases in the supreme court of the United States or in any other court. But if that were good law in that case, I am of the opinion that it should not be applied to a case like the one at bar. In that action the surety upon a bond of a receiver of public moneys was the defendant. What the duties of a receiver of public moneys are does not clearly appear in the case. If his duty is to pay over the money received by him immediately, or within a fixed period after its receipt, then there might well arise a presumption of his default as to moneys received before the surety was bound, if received for any considerable time before he became bound; and in order to charge the surety in such case it might be necessary to overcome such presumption by proof that he still retained it in his actual possession. To release the surety upon the subsequent bond, for money received by his principal before he became bound, either the evidence must show an actual conversion of such money by the principal, or such facts must be shown as raise a presumption of such conversion. This seems to have been the opinion of the supreme court of the United States in the case of *U. S. v. Giles*, 9 Cranch, 215, 237.

In the case of *U. S. v. Linn*, 1 How., 104, 113, the court held that a complaint which did not allege that the money was received by the principal after the bond was signed by the surety, was bad on demurrer; and it is said that if the money was received by the principal before the bond was signed by the surety, in order to hold the surety it must be shown that the money remained in his hands after the bond was signed. There was no question in that case as to what evidence would be necessary to prove the fact that it was so in the hands of his principal.

In *Farrar v. U. S.*, 5 Pet., 373, 389, it was substantially

held that the plaintiff had made out his case when it was shown that the principal was in default, without showing when the default took place; and one reason for reversing the judgment was the refusal of the court below to permit the defendant sureties to prove that the default took place before they signed the bond.

In *U. S. v. Boyd*, 15 Pet., 187, it is only decided that a surety is not liable for a breach of the duty of the principal which occurred before the surety became bound; but it was held that, if the principal had received the money before the surety became bound and had it on hand when he became bound, then he was liable for any subsequent conversion of the same by his principal.

In the case of *Vivian v. Otis*, 24 Wis., 520, it was made to appear by affirmative evidence, produced by the surety, that the default of the clerk took place long before he signed his bond for the second term of his office; and such was the case in *State v. Hood*, 7 Blackf., 127; *Rochester v. Randall*, 105 Mass., 295, and other cases cited by the learned counsel for the appellants.

The evidence in this case shows that the guardian received most of the moneys sought to be recovered in this action, as guardian, between March 21, 1867, and November 6, 1874; and on December 4, 1874, he rendered an account under oath to the county judge, showing that he then had in his hands the sum of $1,859.18 belonging to his wards. This evidence was clearly admissible against the defendant, and was not objected to by the appellants. See *Stephens v. Shafer*, 48 Wis., 54, and cases cited on pages 63 and 65. This account shows affirmatively that there had been no waste of the trust funds by the guardian at the time the defendant became surety in the bond, had any such affirmative proof been necessary. This account was examined and allowed by the court whose duty it was to examine and allow the same. No presumption of any misappropriation of this trust money arises from the fact that some of it had been received by the

guardian several years previous to the rendering of the account, because it was his duty to keep the money as guardian, and, after rendering his account, it was still his duty to retain the money and pay it over in the future as required by law. Had there rested upon the guardian a duty to pay over such money to some other person as soon as received by him, or within a fixed period after such receipt, proof that it had been received a long time before the signing of the bond by the defendants, might raise a presumption that it had been misappropriated.

The only evidence offered on the part of the appellants to prove there had been a conversion of this money before the testator signed the bond, is the evidence of three witnesses who state that the guardian was insolvent at and before the time the bond in controversy was signed. This evidence is not in any way inconsistent with the fact that he had on hand this trust fund. As between the guardian and his creditors, his having or not having in his possession and control these trust moneys would not in any way affect his solvency. It would be a violation of his trust to apply the funds he held as guardian in payment of his personal debts. We think this evidence of insolvency wholly insufficient to prove that the guardian had wasted the estate of his wards at the time the second bond was executed. We may take it for granted, for the purposes of these cases, the surety upon the second bond given by the guardian was not liable for any default of the guardian, or waste of the trust funds, which took place before such second bond was executed; but holding as we do that the sureties on the second bond are liable for any subsequent waste of the funds on hand at the time the bond was given, as well as for the waste of the money which came to his hands after the signing of the bond, it is clear that the circuit court was right in ordering judgment for the respondents for the amount of the penalty in the bond.

2. But it is said that the judgments together are for more

than the amount of the penalty of the bond, and should be reversed for that reason. It is argued by the learned counsel for the appellants that this guardian's bond should be classed among the bonds mentioned in secs. 4015 and 4017, R. S. The bonds mentioned in these sections are clearly those given by administrators, executors, and testamentary trustees. They are the only persons required to give bonds to the judge of the county court. Secs. 3794, 3809, R. S. The provisions of law above cited are intended to regulate actions upon such bonds, and such only. Unquestionably, sec. 2890, R. S., prescribes the form of the judgment to be entered upon a bond of the kind in question. This section was not enacted for the purpose of defining or limiting the amount which may be recovered of the obligor in a penal bond for the payment of money or the performance of any other condition. That question must be determined upon general principles of law.

In these cases judgment was given for the amount of the penalty of the bond, with interest added from the time the commissioners allowed a part of the respondents' claims, and not from the date of the breach of the bond, nor from the commencement of the action. The evidence clearly established the fact that the amount due from the principal in the bond to the respondents at the time of filing their claims in the county court exceeded the penalty of the bond. The only question is, Can the obligee in a penal bond recover in an action against the surety any amount beyond the penalty? We think the authorities in this country establish the doctrine that when the damages resulting from the breach or breaches of the bond exceed the penalty, interest on the amount of the penalty may be recovered from the time of the breach in excess of the penalty. This rule must be limited to cases where interest is recoverable against the principal upon the damages resulting from the breach of the condition of the bond. *U. S. v. Arnold*, 1 Gall. (U. S. C.

C.), 348, 360; *Warner v. Thurlo*, 15 Mass., 154; *Harris v. Clap*, 1 Mass., 308; *Carter v. Thorn*, 18 B. Mon., 613; *Brainard v. Jones*, 18 N. Y., 35; *Long's Adm'r v. Long*, 16 N. J. Eq., 59; 2 Sutherland on Dam., 15, note 1, and cases cited; 2 Sedgw. on Dam. (7th ed.), 262, note *a*, and cases cited; *State v. Homey*, 44 Wis., 615, 621. The cases are not entirely harmonious as to the date from which interest should be computed upon the penalty. The case cited from New York holds that interest may be recovered from the date of the breach of the bond, if the damages then equal or exceed the penalty; and in Massachusetts it is held that interest is recoverable from the date of the commencement of the action. We need not determine which of these rules should be followed, or whether the rule in equity should be followed, which gives damages by way of interest on the penalty when the plaintiff is unjustly delayed in his recovery by vexatious proceedings, as was held in *Grant v. Grant*, 3 Sim., 340 (see cases cited on page 355), as the allowance of interest in these cases comes within all the rules above stated.

*By the Court*—The judgments of the circuit court are affirmed.