BaRdeew, J.
'The trial court evidently proceeded upon the theory that Hildebrcmd and those with whom he was associated were promoters of the plaintiff corporation, and *534 that the transactions which eventuated in the issue of stock to them, under the circumstances mentioned, were sufficient to charge him on his bond. That these men were promoters of the corporation seems quite clear from the evidence. While the term promoter may not be capable of precise definition, yet, as usually understood, it has reference.to the persons who undertake to form and set going a company with reference to a given project. Alger, Promoters, § 1. Hildebrand had obtained the right to sell the Gipp premises. He engaged the efforts of Douglas, Babcock, and Wilhelm, who became jointly interested in the commission he was to receive. Babcock seems to have originated the scheme to form the corporation to buy this land. Hilbebrand joined in the plan, subscribed for stock, signed the articles of organization, and became an officer and director. Through his efforts and those with whom he was associated the corporation was induced to purchase the land at an advance of $200 per acre over the original selling price. While he was engaged in these transactions and conducting these negotiations, he knew that he was making a secret profit, which he had agreed to divide with the other officers and directors of the company. His 'relation and that of his associates to the corporation was that of fiduciaries, and demanded full disclosure and the utmost good faith. He was present at a meeting when the other stockholders were assured that they “ were going in on the ground floor,” and, although he says he did not hear any such statement made, he knew that they were not, and that by his dealings with the corporation he was gaining a large sum of money. His relations were such as to bring his conduct within the condemnation of many cases in this court, cited and commented upon in Hebgen v. Koeffler, 97 Wis. 313, and Zinc Carbonate Co. v. First Nat. Bank,, ante, p. 125. We are quite well satisfied, from the circumstances in proof, that the parties mentioned were in such a position as that the corporation might rightfully call *535 upon them to disgorge. Whether this right can he enforced in this action is quite another question. The plaintiff seeks to enforce this right and to sustain a recovery in the action upon the defendant’s bond. No doubt but that, when plaintiff proved the making of the report by Hildebrand, which showed that he had received $22,68.0, and that, instead of paying out $18,375, he had only paid out $10,000 or $10,125, as the case may be, it had made & prima facie case. It is insisted, however, that this report is conclusive upon both him and his sureties, within the principle of U. S. v. Girault, 11 How. 22. Whatever may be the holdings elsewhere, this court seems committed to the rule that a surety may dispute the showing made by the principal of the money on hand at the time the bond went into effect, and no good reason is perceived why they may not also show the exact-amount received while the bond is in force, unless they are estopped by their own conduct. See Vivian v. Otis, 24 Wis. 518; Clark v. Wilkinson, 59 Wis. 543; Milwaukee Co. v. Pabst, 70 Wis. 352.
The showing made by the sureties discloses the fact that, instead of the treasurer receiving $22,680 on the first assessment, as reported by him, he only received $14,430. This amount he has faithfully accounted for, except three items. One for $1,300 was received and paid out by him to Seiden-schwarz before the bond in suit was given. The other two, $50 and $200, respectively, were paid out to Douglas and Babcock, under circumstances hereinafter noted. In order to make his accounts balance, the treasurer reported that he had received $22,680, the amount of the first assessment, and had paid the first payment on the land, $18,375. According to the evidence, there was due on the first assessment from the parties interested in Hildebrand's commission in the sale of the land, and who were stockholders, as follows: Hildebrand, $2,416; Douglas, $2,414; Babcock, $1,000; Wilhelm, $1,000. Of these assessments Hildebrand only *536 paid into the company $130. Under Ms arrangement with the others, they became interested in the commissions received by him in the following proportions:
Seidensehwarz.§1,300
Douglas., 2,464
Babcock. 1,200'
AVilhelm. 1,000
Hildebrand. 2,286
§8,250
Instead of collecting the amounts due upon the assessment on the stock as stated, and paying over to Gipj> the full amount due on the purchase price of the land, it was. arranged that only $10,125 should be paid (which is the difference between the amount due and the commission agreed upon), and that the $8,250 commission should be applied on the stock assessments. In carrying out this arrangement, Hildebrand paid Seidensehwarz his share of the commission in cash, and also paid Douglas $50 and Babcock $200, being the difference between the amounts of their assessments and their share of the commission. His share being less than the amount of his assessment, he pays over the $130 mentioned. Thus it will be seen that the scheme originally entered into, to secure their profit on the sale of the land,, resulted in their securing the stock of the corporation. In so far as the moneys of the corporation were used in the consummation of this deal, there can be no doubt but that Hildebrand is liable, as are his sureties, for whatever was. used after the bond went into effect. This has application only to the payments made to Douglas and Babcock, the payment to Seidensehwarz having been made before the bond was given. The transaction between Hildebrand, Douglas, and Babcock was only one step in the alleged conspiracy, and the result is simply that they have obtained the stock of the company without having paid for it. They are each liable to the corporation; and it might be, if it were- *537 shown that the stock had been transferred to innocent parties, and-that the corporation was unable to make collection, the treasurer would be responsible as for a breach of his-bond for the faithful discharge of his duties. No such showing being made, we see no ground, under the facts stated,, upon which to hold the sureties liable. The fact that stock has been issued and is outstanding, for which no consideration has been paid, as against the corporation, cannot be held to be a breach of the bond. Under the by-laws, it was the duty of the secretary of the company to collect the moneys due the company and turn them over to the treasurer. It is only for failure to account for money actually received,, or official misconduct to the financial damage of the corporation, that a liability arises on the bond.
The action of the court in directing a verdict for plaintiff was therefore erroneous.
By the Court.— The judgment of the circuit court is reversed, and the cause is remanded for a new trial.