BREHM, Respondent, vs. UNITED STATES FIDELITY & GUAR-
ANTY COMPANY, imp., Appellant.

*November 18, 1904—March 14, 1905.*

*Guardian and ward: Cumulative bond: Discharge of sureties, when
valid: Liability: Prior conversion of moneys: Failure to ac-
count.*

1. Pursuant to an order of the county court the guardian of an in-
competent person gave a new bond, and on the same day filed
an account. Thereupon the court made an order reciting that
the new bond was to take the place of the one theretofore given,
allowing the account, and directing that the old bond be satis-
fied and the sureties and principal be released from further
liability thereon. Notice was not given as provided for in sec.
3967, Stats. 1898, nor was there any examination of the account
as prescribed in sec. 3972, nor any compliance with sec. 4281b.
*Held*, that the release was ineffective and that the new bond
was merely cumulative.

2. The sureties on such new bond were liable, in accordance with its
terms, for a breach thereof by failure of the guardian to settle
his account at the expiration of his trust and to "pay and de-
liver all the property, real and personal, remaining in his
hands, or due from him on such settlement,"—even though, be-
fore such bond was given, the guardian had converted moneys
of the estate to his own use and had given himself false credits
of equal amount in the account filed and approved when the
new bond was given.

3. The attempt of a guardian to loan funds of his ward to himself,
and the giving of his note therefor, cannot be considered an in-
vestment of the trust funds or lessen his liability to account
therefor as guardian.

APPEAL from a judgment of the circuit court for Sheboy-
gan county: MICHAEL KIRWAN, Circuit Judge. *Affirmed.*

This action was commenced February 13, 1902, to recover
$10,469.56 upon a guardian's bond given by the defendant
Otto Brehm as principal, and the defendant guaranty com-
pany as surety, January 5, 1899. The execution of the bond
and liability to a certain amount are admitted, but it is
claimed that the amount of the recovery is excessive. Issue

being joined and trial had, at the close of the trial the court found as matters of fact, in effect:

(1) That September 29, 1896, the defendant Otto Brehm was appointed guardian of Jacob Brehm, an incompetent person, and was required to give bond in the sum of $30,000, which bond was given by Otto with sureties, and approved by the county court, and October 15, 1896, letters of guardianship were issued thereon to Otto.

(2) That December 14, 1896, Otto, as such guardian, filed his inventory therein, from which it appeared that there were notes and mortgages belonging to Jacob which amounted to the appraised value of $24,440.47, cash $237, and real estate $1,000; making a total of $25,677.47.

(3) That December 10, 1897, Otto, as such guardian, filed a verified account in the county court, by which it appeared that, after deducting expenditures, there remained in his hands notes and mortgages amounting to $22,943, balance on hand $1,551.07, real estate, $1,000; making a total of $25,497.07.

(5) That January 5, 1899, pursuant to an order of the county court, Otto gave to the said Jacob a new bond in the sum of $30,000, signed by Otto as principal and the defendant guaranty company as surety, containing the following:

"The condition of the above obligation is such, that whereas the above-named principal obligor has been appointed guardian of the above-named obligee, incompetent: Now, therefore, if the said Otto Brehm shall make a true inventory of all the estate, real and personal, of his said ward, that shall come to his possession or knowledge, and turn the same into the county court of the proper county within such time as the judge shall order, and shall dispose of and manage all such estate according to law and for the best interest of the ward, and faithfully discharge his trust in relation thereto and also in relation to the care and custody of the ward, and shall render an account, on oath, of the property, real and personal, of the ward in his hands, and all proceeds or interest derived therefrom, and of the management and dis-

position of the same, within one year after the filing of his last annual report, and annually thereafter, and at such other times as the proper court shall direct, and shall, at the expiration of such trust, settle his account with the county court, or with the ward if he shall be adjudged competent, or with his legal representatives, and pay and deliver all the property, real and personal, remaining in his hands, or due from him on such settlement, to the person or persons entitled thereto, then this obligation to be void; otherwise of full force, virtue, and effect."

(4) That January 5, 1899, and after such execution of the new bond, Otto filed his verified account in the county court, in which he was charged with the following amounts: Personal property as per last account, $24,433.82; interest received since the last account, $1,036; real estate $1,000— making the total of $26,469.82; and he was therein credited with numerous items in the aggregate amount of $26,469.82.

(6) That January 5, 1899, the county court made an order approving of such new bond of Otto, and filed the same January 6, 1899, which order, among other things, recited that such bond was "to take the place of a bond heretofore given by the said Otto Brehm as general guardian, and upon filing the account of said guardian up to date, which account is hereby allowed and confirmed, it is ordered that the said bond heretofore given by the said Otto Brehm as general guardian, and his sureties, be satisfied, and that the sureties on said bond and the principal be released from any further liability on the same." Such guardian's account was not examined by the county court at its next regular term after the date of order or of the filing of said account, nor was it examined by that court on notice to the ward or to any other person, nor was a guardian *ad litem* appointed for the ward to receive such notice, or to represent the ward at such examination, before the making or entry of such order of January 5, 1899, notwithstanding the fact that said account on its face showed a loan of $5,500, made by the guardian from the estate to

himself individually, which was *prima facie* evidence of the conversion of that sum by the guardian.

(7) In July, 1899, Otto absconded without any new accounting, and his whereabouts since has been unknown. December 12, 1899, the county court, pursuant to due notice of hearing, revoked the guardianship of Otto and removed him, and by the same order the plaintiff, *William Brehm,* was appointed such guardian in his place, and letters of guardianship were granted to him January 11, 1900.

(8) After hearing and on November 24, 1900, the county court adjudged that there was due to the estate of Jacob from Otto $10,469.56, with interest from January 5, 1899, and that Otto and the guaranty company were liable therefor, and by order made at that time the plaintiff was directed to bring an action to recover such amount.

(9) On May 1, 1901, Jacob died testate, and his will was admitted to probate June 25, 1901, and on July 16, 1901, the plaintiff was appointed administrator of his estate with the will annexed, and his bond as such was approved August 23, 1901, and letters of administration thereupon issued to him.

(11) Pending an appeal therefrom to the circuit court, and pursuant to a stipulation filed on January 20, 1902, the county court ordered this action to be brought upon the bond of January 5, 1899.

(12) In the account of January 5, 1899, there was an error in favor of Jacob of $9.75, which, when taken out, left a balance of $26,002.46. Plaintiff received as such administrator of the estate notes and mortgages amounting to $13,898, which were scheduled in Otto's account of January 5, 1899; also Meyer note and mortgage, upon which there was a balance due of $100 after deducting the payment to Otto of $300, and not accounted for. The plaintiff also received and credited to Otto's account notes and mortgages running to Jacob or to Otto $1,280, not scheduled in his account of January 5, 1899; also real estate $1,000—making a total of

$16,278, which, when deducted from the $26,002.46, leaves a balance of $9,724.46, with interest from January 5, 1899, all of which remains unpaid.

(13) The following securities, inclosed in a package of papers, were handed to the attorney for the plaintiff, but were never accepted by the plaintiff as part of the estate of Jacob; that is to say: (a) Note of Herman Brehm for $229, dated October 26, 1897, payable to Hugo Brehm, which never belonged to Jacob Brehm, deceased, or to his estate. (b) Note of Grashorn for $500, dated December 5, 1898, payable to Otto, which never belonged to Jacob or to his estate. (c) Note of Muller for $50, dated October 22, 1887, due one year after date, payable to Jacob, interest paid to October 22, 1892, scheduled in the inventory of Otto as guardian, but is therein stated to be uncollectible and is appraised as worthless, and was not charged to Otto in said inventory, but was fraudulently credited to him as an asset on hand. (d) Note of Giblin, dated June 5, 1897, for $25, not included in either of the accounts of Otto, and is not collectible. (e) Note of Otto for $1,000 to Jacob, dated April 27, 1897, payable two years after date, with interest, scheduled in Otto's first account but not in his last account, and which is of no value. (f) Note of Otto to Jacob for $1,200, dated May 6, 1899, which is not collectible and is of no value. (g) Note of Hugo Brehm to Otto Brehm for $50, dated November 27, 1893, payable six months after date to Otto, not inventoried, and is not included in either account, and never belonged to Jacob or to his estate, and was outlawed when the plaintiff was appointed as Otto's successor, and is not collectible.

(14) The following items in Otto's account of January 5, 1899, never came to the possession of the plaintiff in any capacity: (a) Otto's note and mortgage to Jacob for $5,500, dated January 5, 1899, assigned to the bank June 5, 1899, as collateral security for the payment of $3,000, besides interest; and such assignment was an appropriation thereof

by Otto to his own use and benefit for the payment of his per-
sonal debts.    (b) Note of De Wilde and Gagodnigg for
$2,000, dated June 6, 1898, payable to Otto, with an indorse-
ment of $500 and interest to June 6, 1899.    The note was
afterwards transferred by Otto to the Citizens' Bank of She-
boygan, and was afterwards paid to the bank by one of the
signers, and none of the money received thereon has ever
come to the hands of the plaintiff in any capacity.    Such
transfer of the note by Otto was an appropriation thereof to
his own individual use.    (c) Note and mortgage given by
Eimermann for $2,500, dated May 29, 1896, payable to
Jacob, paid to defendant Otto March 16, 1899, and the mort-
gage was satisfied of record by him, and he has not ac-
counted for any of the proceeds.    (d) Cash to the amount of
$435.21, on hand January 5, 1899—making the total amount
$9,935.25.

(15) At the time of executing the bond of January 5, 1899,
there was no petition by any surety on the first bond asking
for release from future liability thereon, and there was no
order by the court to show cause why Otto, as such guardian,
should not be required to account and the sureties on the first
bond be released, or that Otto, as such guardian, be required
to give a new bond; and no petition or order to show cause of
any kind was made or served at any time or prior to the giving
of the new bond, as required by sec. 4281b, Stats. 1898.

(16) The summons in this action was not served upon the
defendant Otto.

(17) That Otto, as such guardian, has committed the fol-
lowing breaches of the bond of January 5, 1899, upon which
this action is brought: (a) He did not dispose of and manage
all of the estate coming to his hands according to law and for
the best interest of the said Jacob, and faithfully discharge
his trust in relation thereto; but, on the contrary, by making
investments on insufficient security and by converting money

and property of the estate to his own use, wasted the said estate to the damage of the plaintiff. (b) He failed and neglected to file any account of the property, real and personal, in his hands, and the proceeds and interest derived therefrom, and the management and disposition of the same, within one year from the time of his last report, January 5, 1899, or at any time thereafter. (c) He failed, upon the expiration of the trust, December 12, 1899, when he was removed from his trust as guardian, to settle his account with the county court, or with the plaintiff as guardian of Jacob or as such administrator, and has failed and neglected to pay over and deliver all of the property, real and personal, then remaining in his hands or due from him to the plaintiff as such guardian or as such administrator, and he has ever since that time failed and neglected to settle his account with the county court or the legal representative of Jacob, deceased.

And as conclusions of law thereupon the court found that by reason of the said breaches of the bond and the waste of said property and the failure to pay over and deliver all of the same to the plaintiff, the plaintiff, as such administrator, has suffered damage to the amount of $9,724.46, for which amount Otto, and the guaranty company as surety, are now indebted to the plaintiff, with interest thereon from January 5, 1899; that the plaintiff, as such administrator, is entitled to judgment for said sum, with interest thereon from January 5, 1899, against the defendants Otto and the guaranty company, jointly and severally, with costs and disbursements of this action to be taxed; and judgment was ordered to be entered accordingly. From the judgment so entered the guaranty company appeals.

For the appellant there were briefs by *Simon Gillen* and *Winkler, Flanders, Smith, Bottum & Fawsett,* and oral argument by *J. G. Flanders.*

*Francis Williams,* for the respondent.

The following opinion was filed January 10, 1905:

Cassoday, C. J.   1.  This case must turn upon the construc-
tion and effect of the bond of January 5, 1899, upon which
this action is based.  The conditions of the bond are given in
full in the foregoing statement.   At the time of giving the
bond the statute required the guardian of an incompetent per-
son to give bond in like manner and with like condition as pre-
scribed with respect to the guardian of a minor, with one ex-
ception not relevant here.   Sec. 3981, Stats. 1898.   The ref-
erence therein is to the section which declares that, "before
appointing any person guardian of a minor, the court shall
require such person to give a bond to the minor" as therein
directed and conditioned as therein prescribed.   Sec. 3966,
Stats. 1898.   As stated by counsel for the defendant, the con-
ditions of the bond here in question are in the terms required
by that section.   Counsel contends that the conditions of the
bond are all prospective, and in support of such contention
cites *Holden v. Curry,* 85 Wis. 504, 511, 55 N. W. 965, 967,
where Mr. Justice Pinney, speaking for the court, said that:

"All the prescribed conditions of the bond are prospective,
and none of them have any relation to what has occurred in
the past.   The bond is therefore no protection or security to
the ward for any interference or intermeddling with his prop-
erty by his guardian before he was appointed such."

As stated by the learned trial judge in a carefully prepared
opinion—so much of which should have been printed in the
case as is required by the rule:

"The real point there decided in this regard is that a surety
on the bond of a guardian is not liable for his acts of inter-
meddling with the ward's estate before any guardian had been
appointed."

The question of "the liability of a surety on an additional
or cumulative bond of the guardian" was not there involved,
and of course was not adjudicated.   In the case at bar Otto

had been such guardian of Jacob for more than two years prior to the giving of the additional bond in question. In regard to the giving of such bonds and the discharge of sureties on bonds previously given, the statute declares that:

"The county court may, at any time, require additional bonds to be given by any guardian whenever it shall deem it necessary, and may discharge the existing sureties from future responsibility, *after notice* given as such court may direct, when it shall *satisfactorily* appear that no injury can result therefrom to those interested in the estate." Sec. 3967, Stats. 1898.

Here it affirmatively appears that no notice, as thus prescribed, was ever given, and that no examination of the guardian's account was ever had, as prescribed by statute; much less that it was made to appear to the county court, satisfactorily, that no injury could result from the discharge of sureties on the prior bond to those interested in the estate. Secs. 3967, 3972, Stats. 1898. Under a similar statute it was held in Michigan that

"the discharge of a surety on a guardian's bond is void where it is made without notice to the ward or his next of kin, and without examination of the guardian's account, but merely on the verbal application of the surety and the consent of the guardian." *Rice v. Wilson,* 129 Mich. 520, 89 N. W. 336.

In *Clark v. Wilkinson,* 59 Wis. 543, 545, 18 N. W. 481, cited by counsel for the defendant, the question of the liability of a surety upon such additional bond was involved, but it appeared "affirmatively that there had been no waste of the trust funds by the guardian at the time the defendant became surety in the bond." 59 Wis. 551 (18 N. W. 484). So the question of defalcation prior to the execution of the bond in that suit was not involved; but Mr. Justice TAYLOR, speaking for the court, there said that:

"It is evident to us that the surety on this bond is not only liable for the failure of the guardian to account for the moneys received by him as guardian after the bond was exe-

cuted, but he is equally liable for all money in the hands of the guardian belonging to the wards at the time the bond was executed." 59 Wis. 549 (18 N. W. 483).

It is claimed by counsel for the defendant that sec. 3967 was supplemented by sec. 4, ch. 335, Laws of 1897, now contained in sec. 4281b, Stats. 1898. That section expressly authorized a surety on a guardian's bond or his representative to apply to the proper court by petition "to be relieved from further liability as such surety" for such acts of the guardian as might occur "after the date of the order relieving" him, to be granted, as therein provided, upon an order to show cause why the guardian should not account and give a new bond and the surety be relieved from further liability. As stated in the opinion of the learned trial judge:

"The bond in suit was not given pursuant to sec. 4281b. No surety on the first bond petitioned the court to be released from future liability thereon; nor that the guardian be required by order of the court to show cause why he should not account and the surety be relieved; nor that the principal be required to give a new bond. No petition whatever was made in that regard. No such order to show cause was made or served. No account was rendered in obedience to such order. No new bond was given or approved pursuant to such order nor to any precedent order of the court. No former surety was released pursuant to hearing upon such petition or order to show cause. Sec. 4281b was not complied with in any essential respect. The proceedings taken do not purport to have been taken under, nor to have had any reference whatever to, that statute. The second bond makes no reference to that statute, and contains no reference to or recital of proceedings taken thereunder. The order of January 5, 1899, purporting to release the former sureties, contains no such reference or recital."

Prior to the giving of the bond in question this court held that:

"In absence of express statute (such as now exists in sec. 4281b, Stats. 1898), county courts have no power, either by taking a new bond or otherwise, to discharge sureties from liability for either past or prospective misconduct of an ex-

ecutor, administrator, or trustee; and a new bond, if taken,. is merely cumulative." *Richter v. Estate of Leiby,* 101 Wis. 434, 441, 77 N. W. 745. To the same effect, *Rudolf v. Malone,* 104 Wis. 470, 80 N. W. 743.

Since no steps were ever taken as prescribed by statute to relieve the sureties or to discharge Otto as principal on the original bond, it is obvious that the bond in question must be regarded as an additional or cumulative bond, as mentioned in the statute. Sec. 3967.

It is conceded that the defendant company, as surety, is liable for the failure of Otto, as such guardian, to account for all moneys and property received by him as such guardian after the execution of the bond; but in the language of Mr. Justice TAYLOR above quoted, the defendant company "is. equally liable for all money in the hands of the guardian belonging to the ward at the time the bond was executed." The bond expressly required Otto, as such guardian, (1) to make a true inventory of all the estate of his ward coming to his possession or knowledge, and turn the same into the county court within such time as the judge should order; (2) to dispose of and manage all such estate according to law and for the best interest of the ward, and faithfully discharge his trust in relation thereto; (3) to render an account, on oath, of the property of the ward in his hands, and all proceeds or interest derived therefrom, and of the management and disposition of the same, within the year therein stated, and at such other times as the court should direct; (4) and at the expiration of his trust to settle his account as therein directed, and to "pay and deliver all the property, real and personal,. remaining in his hands, *or due from him* on such settlement, to the person or persons entitled thereto."

2. It appears that in his account of January 5, 1899, Otto did not make a true inventory of the estate, but gave himself a false credit, among other things, of a note dated October 26, 1897, executed by Herman Brehm, payable to Hugo Brehm, for $229, with interest at five per cent., which never belonged

to Jacob or his estate; also a note dated December 5, 1898, executed by Grashorn and payable to Otto for $500, with interest at five per cent., which never belonged to Jacob or his estate; also a note dated October 22, 1887, executed by Muller for $50, with interest at eight per cent., indorsed paid to October 22, 1892, scheduled as uncollectible and worthless, and not charged to Otto, but fraudulently credited to him. These three notes, amounting on their face to $779, were improperly credited to Otto in his account of January 5, 1899, and, for the reasons stated, the plaintiff was justified in refusing to receive them as part of the estate of Jacob. It must be presumed that the $779 with which Otto was so falsely credited in his account with the estate was either intended as the equivalent of that amount of money in the hands of Otto at the time of executing the bond of January 5, 1899, or that he had previously converted the same to his own use from the estate, and that in either view he had breached the bond by failing at the expiration of his trust to settle his account as therein prescribed, "and pay and deliver all the property, real and personal, remaining in his hands, *or due from him on such settlement,*" as therein required. *Rudolf v. Malone,* 104 Wis. 470, 472, 80 N. W. 743; *Hutson v. Jenson,* 110 Wis. 26, 85 N. W. 689; *Choate v. Arrington,* 116 Mass. 552; *Benchley v. Chapin,* 10 Cush. 173; *Mattoon v. Cowing,* 13 Gray, 387; 15 Am. & Eng. Ency. of Law (2d ed.) 119, and cases there cited.

3. It appears that the note and mortgage dated January 5, 1899, executed by Otto, and payable three years after date to Jacob, for $5,500, with interest at five per cent., never came to the possession of the plaintiff in any capacity, although it was credited to Otto in his account of January 5, 1899, but was, on June 5, 1899, assigned by Otto to the bank as collateral security for the payment of his own indebtedness to the amount of $3,000. Such attempt of Otto to loan the funds of his ward to himself could not in any way lessen his liability, as such guardian, upon the bond in question, nor

the liability of his surety thereon. Thus it has recently been held by this court that "where a guardian ostensibly invested her ward's money in a loan to herself, giving notes and mortgages on her own property to her wards, the transaction cannot be treated as in any respect an investment of the trust funds." *Hutson v. Jenson,* 110 Wis. 26, 85 N. W. 689. The cases above cited are to the same effect. We must hold that upon Otto's removal as such guardian he was bound, as pre-scribed in the bond, to fully account for and settle for that note and mortgage, and "to pay and deliver" the amount thereof as "due from him on such settlement," as therein pre-scribed. Having failed to do so, the defendant company, as his surety, is answerable therefor.

4. So the note dated June 6, 1898, executed by De Wilde and Gagodnigg, and payable two years after date, at the bank, to the order of Otto, guardian of Jacob, for $2,000, with interest at six per cent., never came to the possession of the plaintiff in any capacity. The note was credited to Otto in his account of January 5, 1899, as $1,500, and it appears that $500 of the principal and the interest to June 6, 1899, were paid thereon after the account of January 5, 1899, but none of either of those payments ever came to the possession of the plaintiff in any capacity. The note was afterwards transferred by Otto to the bank, and was paid to the bank by De Wilde November 6, 1899. The facts stated in respect to that note show that the same was appropriated by Otto to his individual use, and hence, upon the principles already stated, constituted a breach of the bond for which Otto and the defendant company are liable. Other liabilities are conceded by counsel.

*By the Court.*—The judgment of the circuit court is affirmed.

A motion for a rehearing was denied March 14, 1905.

KERWIN, J., took no part.