Argued June 27, modified and remanded July 25, 1922.

## STATE *v.* CROOK COUNTY BANK.

(208 Pac. 749.)

**Depositaries—Surety of Bond for Deposit of County Money not Liable for Deposit of Irrigation District's Funds.**

1. Under Laws of 1913, page 515, Section 3259 et seq., Or. L., providing for depositary for county funds, etc., and Section 7316, Or. L., providing that the county treasurer be *ex-officio* treasurer of

---

1. Liability on bond·of depositary of public funds, see note in Ann. Cas. 1916B, 1245, 1250, 1255.

an irrigation district within the county, and Section 7331, as amended by Laws of Special Session of 1921, page 14, providing that all interest and penalties collected by the sheriff for taxes levied by the district should be paid to the county treasurer, the money collected for an irrigation district, although by county officers, belongs to the district, and does not become county funds, and liability of a surety on a bond given to secure the deposit of county money, where funds of the irrigation district were mingled with county funds and deposited in a defunct bank, was limited to the amount of county funds.

**Appeal and Error—Finding not Disturbed on Appeal Unless Without Supporting Evidence.**

2. In an action at law tried before a court without a jury, the findings of the court are tantamount to a verdict, which cannot be disturbed unless the appellate court can say there was no evidence to support such a verdict.

From Crook: T. E. J. DUFFY, Judge.

Department 1.

MODIFIED AND REMANDED.

For appellant there was a brief over the names of *Messrs. Dey, Hampson & Nelson* and *Mr. Clarence J. Young,* with an oral argument by *Mr. Young.*

For respondent there was a brief over the names of *Mr. Willard H. Wirtz* and *Mr. Jay H. Upton,* with an oral argument by *Mr. Wirtz.*

BURNETT, C. J.—For the sake of brevity in this opinion the Crook County Bank will be referred to as "the bank," and the United States Fidelity & Guaranty Company, its codefendant, will be designated as "the company."

On June 1, 1914, the bank, as principal, and the company, as surety, executed to the state a bond in the sum of $20,000 conditioned as follows:

"Whereas, the said principal, the Crook County Bank, of Prineville, Oregon, has applied for a part of the current funds of the county treasurer, Crook

County, Oregon, to be deposited in said bank, the amount whereof shall be subject to withdrawal, or diminution by said treasurer, as the requirements of the said county shall demand, and which amount may be increased as the treasurer may determine; and whereas, said bank, in consideration of such deposit and for the privilege of keeping same, has agreed to pay the County of Crook, interest on such sum, at the rate of two per cent (2%) per annum on the amount of said deposit, computed upon the average daily balance, the same to be credited and paid monthly upon said daily average of such amount, and the said bank shall have on deposit for the month, or any fraction thereof next preceding crediting all payment of interest, which interest shall be computed and credited to the account and shall become thenceforth a part of said deposit.

"Now, therefore, if the said Crook County Bank, of Prineville, Oregon, shall at the beginning of each and every month, render to the county treasurer a statement in duplicate, showing the daily balance of the county moneys held by it during the month next preceding, and the interest thereon, and shall well and truly keep all said sums of money so deposited, or to be deposited as aforesaid and the interest thereon, subject at all times to the check or order in writing of the county treasurer, and his successor in office as shall be by him demanded, and shall calculate, credit and pay said interest, as aforesaid, and shall in all respects keep Crook County and the county treasurer, harmless and indemnified for and by reason of making said deposit or deposits, then this obligation shall be void and of no effect, otherwise to remain in full force and virtue."

After reciting the conventional characters of the parties and the bond, the complaint declares that on December 27, 1920, the bank became insolvent and put its property in the hands of the superintendent of banks for liquidation; and that on that date the county treasurer had on deposit in the bank $10,-

104 Or.—32

414.17, "the same being public funds of Crook
County, State of Oregon, in said treasurer's hands."
It is also charged that the bank had neglected to
credit interest of 2 per cent per annum on the aver-
age daily balance in the treasurer's account, by rea-
son of which there was due to the county $122.17 on
that date. The giving of the bond, the insolvency
of the bank and its failure to pay the balance are
admitted; otherwise the complaint is traversed by
the answer.

1. The case was tried on an agreed statement of
facts, reading thus:

"That on December 27, 1920, the county treasurer
of Crook County had on deposit with the Crook
County Bank subject to his check or order in writ-
ing the sum of $10,414.17; that interest was due on
this deposit to the extent of $122.17; that said treas-
urer also had on deposit in the First National Bank
of Prineville the sum of $31,331.30; that included
in these two deposits and not segregated, and not
yet turned over to the Ochoco Irrigation District,
were funds of the said irrigation district amounting
to $4,114.90, which came into the treasurer's hands
regularly through turn-overs from the sheriff's office
as the taxes of the said county and district were
collected; that these irrigation district funds were
carried separately at the depositories during the
years 1917 and 1918 but were later included in the
general deposit and disbursing funds of the county
treasurer; that the plaintiff has made due demand
of the defendants in this cause for the first two
sums named above; that an analysis of the treas-
urer's receipts and disbursements by funds taken off
his books for the period of January 1, 1920, to
December 31, 1920, is hereto attached and made a
part of this statement, designated as 'Schedule A,'
and a comprehensive analysis of receipts and dis-
bursements by months during the year 1920 is hereto
attached and made a part hereof and designated

'Schedule B,' but, it is further stipulated and agreed that the plaintiff objects to the consideration of any funds that may have been deposited in the First National Bank aforesaid, and objects to the consideration of the Ochoco District funds separately from other county levies mingled with the sum the county treasurer had on deposit in the Crook County Bank as aforesaid on December 27, 1920, and objects to all references by 'Schedules A and B,' to other funds or moneys than the first two sums mentioned in this stipulation, for the reason that under the pleadings all such consideration of other funds either in the Crook County Bank or in the First National Bank is immaterial, incompetent and irrelevant, and not an issue, and that if such evidence is considered by the court and admitted, that plaintiff may have an exception to the admission and consideration thereof, as though same had been ruled on in a trial in open court.''

The schedules referred to in the statement of facts show that of the total of $32,365.62 evidenced by the treasurer's ledger balances, all funds except irrigation district moneys amounted to $28,250.72, and that the funds of three different irrigation districts, together with a balance in the escheat fund aggregated $4,114.90. Of the total $32,365.62 there was deposited in the defendant bank the sum of $10,-414.17, and in the First National Bank $20,917.13, or $31,331.30 in all. The difference of $1,034.32 between that sum and $32,365.62 is accounted for by checks not yet entered in the treasurer's books.

The essence of the contention on behalf of the state is that the company is liable not only for the general funds of the county but also for the moneys of the irrigation districts which were in the treasurer's hands but which were mingled with the other funds and not deposited separately in the bank. The

company contends that these irrigation district funds are not county money within the meaning of the statute, and hence not within the purview of its bond.

The statute under which the litigation arises and the deposits were made has this title: "An act to secure to the several counties of the State of Oregon, interest on county money, to provide for depositaries for county funds, and defining the duties of the county treasurer thereto, describing the security to be given and providing for the approval thereof, providing for the payment of funds held in trust by other public officers to the state and providing penalties for the violation of this act": Laws 1913, Chap. 273, p. 515; Or. L., § 3259 et seq. The enactment was filed in the office of the Secretary of State February 27, 1913. By Section 1 of that act it is said:

"It shall be the duty of the county treasurers of the several counties of the State of Oregon, on the first Monday in June of each year to designate such banks and trust companies within the respective counties as have, under the provisions of this act, become eligible county depositaries for the purpose of receiving on deposit funds of said county and paying out the same on order, or check of the county treasurer."

Throughout the statute we find various allusions to the money to be deposited, such as "securities offered for the protection of the county funds," and "applications for county money." In Section 2 the treasurer is directed to keep on deposit in such depositaries "all the moneys of the county coming into his hands." The depositaries are ordered to pay to the county, interest, which is to be credited to the county general fund. Section 3 enjoins upon the depositaries to make statements of "money belonging to the county." The bond, as above stated, provides

for the diminution of deposits "as the requirements
of the county shall demand," and further on the
section speaks of "daily balances of the county
moneys." The undertaking upon which this action
is founded is not to be confused with the treasurer's
official bond prescribed in Section 3408, Or. L.,
whereby that official is "to faithfully keep, account
for and pay over all moneys that may come into
his hands by virtue of his office, and otherwise well
and faithfully perform the duties of such office."

In the organization of irrigation districts we find,
in Section 7316, Or. L., that the treasurer of the
county in which the petition for the organization of
the district was filed "shall be *ex-officio* treasurer of
the district and any moneys collected on behalf of
the district shall be forthwith transmitted to such
treasurer, specifying the fund in which it is to be
deposited." The taxes levied by the district are to
be collected and accounted for in the same manner
as other municipal taxes and the collection thereof
enforced in the same manner as other taxes of the
county, provided that all interest and penalties col-
lected by the sheriff shall also be paid to the county
treasurer as *ex-officio* treasurer of the district:
Or. L., § 7331, as amended by Chapter 2, Laws of
Special Session of 1921. An irrigation district is
empowered to acquire property, to sue and be sued,
and generally to enforce, maintain and preserve any
and all rights created by the statute or acquired
in pursuance thereof: Or. L., § 7318. Such districts
are bodies politic and are legal entities capable of
owning property and otherwise acting as indepen-
dent institutions. The money collected for an irriga-
tion district, although by county officers, belongs to
the district. The law has made the officer who hap-

pens to be county treasurer the treasurer for the district. This, however, does not deprive the district of any of its property. Nothing in any of the statutes divests the district of its ownership of its own funds, nor does it make them county funds. The plain reading of the statute shows that the county is empowered only to lend its own money to qualified depositaries. This cannot mean all money of whatever kind happens to come into the hands of the treasurer within the meaning of this statute or the undertaking therein required.

In *Southern Oregon Co.* v. *Gage,* 100 Or. 424 (197 Pac. 276), we had occasion to consider the matter of money deposited *pendente lite* by the plaintiff there in some litigation between it and the tax collector of Coos County relating to taxes upon realty. The result of the litigation was that the deposits were returned to the plaintiff. Meanwhile, operating under the depositary act here under consideration, the treasurer had deposited the money in banks in that county. One of those institutions contended that this was not county money and that the treasurer was not entitled to interest, but notwithstanding this the bank paid interest to the treasurer and he applied it to the payment of county warrants drawn on the general fund. The conclusion of the matter was, that such deposits were not county money within the meaning of the statute; that the bank was not compelled to pay interest; but that its payment was a voluntary one, leaving the bank without any claim to recover it, and with the further result that the treasurer had no right to it as belonging to the county, and hence it must be paid to the owner of the funds of which the interest was the increment.

It is plain, therefore, that money which was in fact the property of irrigation districts could not be the property of the county, as the two municipalities are separate and distinct, although both occupying the same territory in large part. We cannot conceive that it was the intention of the legislature to permit the county to enrich its general fund by interest on money actually the property of another public corporation or district, much of which is the possible product of taxes of citizens of some other county, for such districts may be formed to cover lands lying in two or more counties. The restriction in such cases is that the petition for organization must be filed in the county in which most of the land is situated which is to be included in the proposed district. It is possible, therefore, for county A to be drawing interest on funds raised in counties B, C, and D, if the theory of the plaintiff is correct. Moreover, the deposit is to be diminished "as the requirements of the county shall demand," plainly indicating that it is only the money actually belonging to the county which it is entitled to loan to the bank as a depositary to be repaid in proportion to the requirements of the county and not those of some other municipality. When the money was deposited in the bank it took on the character of any other deposit in such an institution. In other words, it became the money of the bank, and in its stead arose an indebtedness to the depositor, which was to be repaid with interest on the demand of the county treasurer by warrant issued as in such cases provided.

The case of *Myers* v. *Board of Commrs.*, 60 Kan.189 (56 Pac. 11), has been cited in support of the contention of the state. The statute under which that case

was decided provides that, "the county treasurer shall deposit daily all public money in some responsible bank," etc. We must distinguish between public money and merely county money. County money of course is public money, but it is not the only kind of public money. The bond there in suit recited the act in its preamble but in the body of the bond used the term "county funds." The court held that under all the circumstances the parties intended that the term "public money" should be synonymous with the other term, "county funds." Likewise in the case of *Maryland Fidelity & Deposit Co. v. Wilkinson County,* 109 Miss. 879 (69 South. 865), the question arose about whether or not drainage district moneys were county funds. The court said that the county had the legal title to the township funds and hence was entitled to sue on the bond securing deposits of such moneys, giving as a reason therefor that the statute required money paid for the use of deposits to be distributed among the several funds entitled thereto. In this respect, that statute differs from ours, for here the interest paid by the depositaries goes into the county general fund. Hence the reason for the opinion in that case fails in the present contention. The principle is, that the owner of the fund is entitled to the increment of interest, on its own money but no more, so that the only fund which the county is authorized to loan to a depositary is county money, in the words of the statute, belonging to the county; and upon it alone is the county entitled to draw interest.

The bond in suit was given to secure the deposit of county money and no other. And although, as stated in *United States Fidelity & Guaranty Co. v. Woodson,* 145 Fed. 144 (76 C. C. A. 114), a bond

executed by a surety for a compensation will be con-
strued rigidly against the company and liberally
against the public, yet this precept does not author-
ize us to read into the bond something which is not
there. The statute itself is part of the bond, the
latter instrument having been given in pursuance of
the enactment. They must be read together, and
since the law demands security for county money
only, the term cannot be expanded to include district
money. Having alleged the bond and that money
within its protection was withheld by the deposi-
tary, it was incumbent upon the plaintiff to prove
that allegation as against a denial of it. Accord-
ing to the stipulation of facts, the treasurer mingled
the funds of all kinds which came into his possession
and deposited them in two banks without in any way
segregating the money going to make up those de-
posits. It was impossible to tell in which bank, if
in either, the item of $4,114.90 of district funds was
deposited. Virtually the company concedes that it
is liable for the full amount claimed, less the dis-
trict funds in the sum of $4,114.90.

2. We are not unmindful of the doctrine that in
an action at law tried before a court without a jury,
the findings of the court are tantamount to a ver-
dict, which cannot be disturbed unless the appellate
court can say there is no evidence to support such a
verdict. As stated, this action was tried on an
agreed statement of facts, that is to say, the admis-
sions in that statement constituted the only evidence
in the case. Called upon to prove the traversed alle-
gation that the bank had on deposit $10,414.17 and
was owing an additional item of $122.17 as interest,
all that the evidence showed, when considered with
reference to the statute, was that there was on de-

posit as county money, including interest, $6,421.44. Measured by the admissions, upon which alone as evidence the case was tried, we are compelled to the conclusion that there is no evidence to sustain a verdict for more than the amount last mentioned, with interest thereon at 2 per cent per annum since December 27, 1920. Accordingly the judgment is modified in that respect and the cause remanded for further proceedings.          MODIFIED AND REMANDED.

McBRIDE, HARRIS and RAND, JJ., concur.