LAWRENCE v. AMERICAN SURETY CO. OF NEW YORK.

1. DEPOSITARIES—BONDS—STATE.

State is not entitled to be favored in construction of law and depository bonds so as to certainly preserve its funds inviolate at expense of legal rights of those dealing with it; but State and citizens dealing with it are alike entitled to full protection of law.

2. BONDS—EXISTING LAW BECOMES PART OF STATUTORY BOND.

It is general rule that existing law becomes part of bond commanded or provided by statute, so that omitted conditions required by law are read into bond, and conditions not so required, which limit or restrict liability, are read out of it as surplusage; and this rule governs not only bonds of public officials but others.

3. SAME—BONDS FURNISHED TO STATE TREASURER—DEPOSITORY BONDS.

Bonds furnished to State treasurer pursuant to statute to secure public funds are statutory bonds, and therefore must be given effect in harmony with statute (1 Comp. Laws 1929, § 348).

4. SAME—SURPLUSAGE—RESTRICTING LIABILITY—STATUTES.

Only those provisions of statutory bonds given to secure public funds which have effect of limiting or restricting liability imposed by statute are surplusage (1 Comp. Laws 1929, § 348).

5. PRINCIPAL AND SURETY—BONDS—CANCELLATION.

Surety, bound for indefinite and contingent liability by bond which has no definite time to run, may end his future liability by giving reasonable notice of withdrawal.

6. DEPOSITARIES—BONDS—WHEN SUBJECT TO CANCELLATION.

Depository bonds furnished to State treasurer pursuant to statute, which run for indefinite time, during mutual will of parties, are continuing obligations, and are subject to cancellation on notice, even in absence of cancellation clause (1 Comp. Laws 1929, § 348).

7. SAME—STATES—CANCELLATION CLAUSE VALID.

Cancellation clause in depository bonds furnished to State treasurer pursuant to statute is valid, as it merely affirmed legal rights of parties and fixed, by express agreement, time of notice deemed reasonable; but it did not change statutory obligation or release surety from liability for breaches occurring before effective date of cancellation (1 Comp. Laws 1929, § 348).

8. STATES—STATE TREASURER—DEPOSITORY BONDS.

In case State treasurer should neglect to withdraw public funds after cancellation of depository bond or fail to secure other acceptable bond, State not only has claim against assets of bank, but State treasurer and his official sureties may be liable for any loss (1 Comp. Laws 1929, § 349).

9. DEPOSITARIES—DEPOSITORY BONDS—PRO RATA CLAUSE VALID.

Pro rata clause in depository bonds furnished to State treasurer pursuant to statute is presumably valid and should be reasonably construed, where it was adopted by State and sureties following *dictum* in Supreme Court opinion that said clause

was "effectual," and legislature has not changed it, but on contrary affirmed it by reference in Act No. 40, Pub. Acts 1932 (1st Ex. Sess.) (1 Comp. Laws 1929, § 348). .

10. SAME—NATURE OF BONDS COMMITTED TO JUDGMENT OF OFFICERS.
    Statute permits, but does not require, indemnity or insurance bonds to secure deposits, and officers designated by statute may accept and approve pledge of public or private bonds or other securities, since no standard is provided by statute; character and amount of security being committed to their judgment (1 Comp. Laws 1929, § 348).

11. SAME—MISTAKE OF JUDGMENT.
    Determination of officers designated by statute to accept bonds, made in good faith, that security furnished is "good and ample," justifies deposit, and mistake of judgment therein does not affect legality of conditions of depository bond (1 Comp. Laws 1929, § 348).

12. SAME—LIABILITY CONTINUES UNTIL DISCHARGED.
    Depository bonds given to State treasurer to secure public funds, and approved by officers designated by statute, continue until legally discharged (1 Comp. Laws 1929, § 348).

13. SAME—CONDITIONS NOT INCONSISTENT WITH STATUTE VALID.
    Depository bonds furnished to State treasurer pursuant to statute may contain conditions deemed necessary or advisable by officers whose duty it is to approve them, so long as they are not inconsistent with statutory requirement that they provide for "safe keeping and reimbursement of such surplus funds, whenever called for" (1 Comp. Laws 1929, § 348).

14. SAME—PRO RATA CLAUSE VALID.
    Pro rata clause in depository bonds furnished to State treasurer pursuant to statute is no other than limitation of amount of liability, not of its character, is not inconsistent with statute, and therefore is valid (1 Comp. Laws 1929, § 348).

15. SAME—INCREASING OR SUBSTITUTING SECURITY.
    Officers designated by statute to approve depository bonds furnished to State treasurer have authority thereunder to increase or substitute security as may be necessary, in case security is withdrawn or depreciates in value (1 Comp. Laws 1929, § 348).

16. SAME—SUBSTITUTION—WHEN FORMER SURETY RELEASED.
On making change of security furnished to State treasurer, physical withdrawal and redeposit of money is not necessary; presentation and approval of new security for funds already deposited being equivalent to withdrawal and redeposit, and releases former security from future liability and binds new, if so intended (1 Comp. Laws 1929, § 348).

17. SAME—EFFECT OF APPROVAL OF MORE OR SUBSTITUTED SECURITY.
Approval of more or substituted security for public funds deposited by State treasurer is, in effect, reapproval of whole security for deposit and equivalent to establishing new deposit, and therefore officers designated by statute to approve such security have authority to approve substitution of security as well as more security for deposit (1 Comp. Laws 1929, § 348).

18. SAME—STATE TREASURER'S AUTHORITY TO RELEASE SECURITY.
That State treasurer and his official sureties are not released from liability for public funds by fact that depositary furnishes security therefor, does not add to treasurer's powers, under statute, in reference to releasing security for such deposits (1 Comp. Laws 1929, § 348).

19. SAME.
State treasurer alone may not release security furnished by depositary and approved by officers designated by statute (1 Comp. Laws 1929, § 348).

20. SAME—LIABILITY OF SURETY UNDER DEPOSITORY BOND.
Where there was no substitution of depository bonds furnished to State treasurer, surety continues liable for deposits made during life of bond, although payment was not demanded until after its expiration, at least for reasonable time; and liability of first bond continues although subsequent bond was furnished which would also secure said deposits, in case second bond was not approved as substitution for former (1 Comp. Laws 1929, § 348).

21. SAME—WHEN FORMER SURETY RELEASED BY APPROVAL OF SUBSTITUTE BONDS.
Where there is no claim that, prior to effective substitution of depository bonds furnished to State treasurer, bank could not or would not have paid deposit on demand, acceptance and approval of substitute bonds released former sureties when substitution became effective (1 Comp. Laws 1929, § 348).

22. SAME—"SURPLUS FUNDS" DEFINED.

Words "surplus funds," as used in statute relating to deposit of surplus funds of State and furnishing security therefor, have no technical meaning, but mean funds not necessary to be kept on hand in cash for immediate use or ordinary demands, and therefore general deposit of State treasurer and bonds securing same are covered by statute (1 Comp. Laws 1929, § 348).

23. SAME—WHAT FUNDS COVERED BY DEPOSITORY BONDS.

Receivership funds received by State treasurer by virtue of his office and by command of statute, and by him deposited in bank, are "funds belonging to State," within meaning of statute, and are covered by bonds furnished to State treasurer; manner in which treasurer kept said account or reported said moneys having no effect upon their legal status (1 Comp. Laws 1929, § 348).

24. SAME—WHAT MONEYS STATE FUNDS.

As among State, depositary, and sureties, fact that State has taken possession of moneys pursuant to law is sufficient to constitute them State funds, although they may be held for special purpose (1 Comp. Laws 1929, § 348).

25. SAME—NEGOTIABLE INSTRUMENTS LAW—OWNERSHIP OF MONEY REPRESENTED BY STATE CHECKS.

Liability for loss under negotiable instruments law, through failure to present checks within reasonable time, did not constitute checks drawn by State treasurer on depository assignment of funds represented thereby, and therefore funds represented by such checks were State moneys and within protection of depository bonds (1 Comp. Laws 1929, § 348).

26. SAME—RELATION BETWEEN DEPOSITARY AND STATE.

Relation between depository bank and State is that of debtor and creditor (1 Comp. Laws 1929, § 348).

27. SAME—PAYMENT OF INTEREST—CONTRACTS.

Under statute, payment of interest to State by depositary is matter of contract, and therefore interest cannot be treated differently than on any other contract (1 Comp. Laws 1929, § 348).

28. INTEREST—CONTRACT RATE CHARGEABLE.

Contract rate of interest, if any, is chargeable before and after judgment (3 Comp. Laws 1929, § 14555).

29. DEPOSITARIES—BONDS—CANCELLATION—ESTOPPEL.

Where surety wrote depository bond covering highway funds before receiving statement of State treasurer that he was canceling former bond and that funds had been withdrawn, State is not estopped from denying treasurer's authority to cancel bond (1 Comp. Laws 1929, § 348).

30. ACTION—DECLARATORY JUDGMENT STATUTE.

Where liability of sureties on depository bonds furnished to State treasurer involved their liability to State and to each other, and validity of cancellation and *pro rata* clauses of bonds directly concerned all sureties, which questions could not be determined in suits by State against individual sureties, action for declaratory judgment under statute adjudging rights and liabilities of all parties was properly brought.

Appeal from Ingham; Collingwood (Charles B.), J. Submitted April 19, 1933. (Docket No. 117, Calendar No. 37,189.) Decided June 5, 1933. Rehearing denied October 2, 1933 (see 264 Mich. 516).

Bill by Howard C. Lawrence, State treasurer, against American Surety Company of New York and others for declaratory judgment as to liability upon depository bonds. From judgment for plaintiff as to some defendants only, plaintiff and certain defendants appeal. Modified and affirmed.

*Patrick H. O'Brien,* Attorney General, and *Charles F. Cummins,* Assistant Attorney General, for plaintiff.

*Butzel, Levin & Winston* (*Elliott H. Moyer,* of counsel), for defendants-appellant American Surety Company of New York and receiver of Union Indemnity Company.

*Hayden, Hubbard & Rathbun,* for defendant-appellant National Casualty Company.

*Kerr, Lacey & Scroggie,* for defendant-appellant Western Casualty & Surety Company.

*Coulter & Hampton,* for defendant-appellant Maryland Casualty Company.

*Stevens T. Mason,* for defendant Century Indemnity Company.

*Sherman T. Handy,* for defendant Detroit Fidelity & Surety Company.

*Bishop & Weaver,* for defendant Indemnity Insurance Company of North America.

*Monaghan, Crowley, Reilley & Kellogg,* for defendant Massachusetts Bonding & Insurance Company.

FEAD, J. The action is for declaratory judgment upon the liability of the various defendants to the State and to each other. For convenience, we will abbreviate the names of the defendants, designating them by the distinguishing words in their titles.

January 1, 1931, Howard C. Lawrence became treasurer of the State of Michigan. He designated the Fidelity Bank & Trust Company of Detroit a depository of part of the surplus funds of the State. A contract was executed, requiring the bank to pay the funds "whenever called for," to the State treasurer, his successor in office, or the person lawfully entitled thereto.

Defendants executed surety bonds to the State treasurer and his successors in office to secure performance of the depository contract, the condition of the bonds being substantially in the words of the relevant statute, 1 Comp. Laws 1929, § 348:

"Surplus funds; security required for deposit; interest. SEC. 3. The State treasurer is hereby further instructed to require of any bank, before he shall have made it a depository of surplus funds belonging to the State, good and ample security, to

be approved by the said State treasurer, the auditor general and the secretary of State, for the safe keeping and reimbursement of such surplus funds, whenever called for, and the payment of such rate of interest as the State treasurer, in his discretion, shall deem best for the interest of the State.''

In addition, the bonds contained the provisions:

1.   ''It is mutually understood and agreed between the parties hereto that if the said surety shall so elect its liability for future actions or omissions of said principal may be terminated by giving 30 days' notice in writing to the said Howard C. Lawrence, as treasurer as aforesaid, or his successor or successors in office, and a like notice to the secretary of State and auditor general of said State; and the liability of said surety for the future actions or omissions of said principal shall cease at the expiration of said 30 days, the said surety remaining liable for all or any acts of commission or omission covered by this bond or said contract up to and including the date of expiration of said 30 days' notice.''

2.   ''It is mutually understood and agreed that the said surety shall be liable hereunder for only such proportion of the total loss sustained by the said Howard C. Lawrence, as treasurer of the State of Michigan, or his successor or successors in office, as the penalty of this bond shall bear to the total penalties of all bonds, furnished by said Fidelity Trust Company, of Detroit, Michigan, as principal, in favor of said State treasurer, and in no event shall the surety hereon be liable hereunder for any sum in excess of the penalty of this bond.''

The initial coverage of the deposit was American, $250,000; Union, $500,000; Century, $250,000.

March 26th, the Century mailed notice of cancellation to the three officers named in the statute, and it was received by them.   April 25th, the bank for-

warded bonds of the Maryland, $60,000; Indemnity, $50,000; Detroit, $50,000; Western, $40,000, and Massachusetts, $50,000, aggregating $250,000, to the State treasurer and requested return for cancellation of the Century bond. The substituted bonds were approved by the three officers and filed April 27th, and the Century bond returned the next day for cancellation.

May 22d, the State treasurer acknowledged receipt from the bank of the National bond, $50,000, and Maryland bond, $10,000, in substitution for the Maryland $60,000 bond, and returned the latter. The substituted bonds were approved by the three State officers.

September 8th, Indemnity bond, $50,000, was returned by the State treasurer to the bank at its request, without notice of cancellation, with no substitution, and without knowledge or approval of the auditor general and secretary of State.

September 21st, the Detroit gave notice of cancellation of its $50,000 bond, but to the State treasurer only, who returned the bond September 23d without knowledge or approval of the other officers, and without substitution of other bonds.

September 8th, the State treasurer returned the Massachusetts $50,000 bond to the bank at its request. September 11th the surety wrote the State treasurer acknowledging receipt of the bond for cancellation, asking confirmation of cancellation, with statement of the treasurer that the funds covered by it had been returned to the State and that the bond was not effective after September 10th. September 14th the State treasurer wrote the surety, stating that he was inclosing the bond, it had been returned for cancellation to the bank on September 8th, and the funds covered by it had been with-

drawn. The surety gave evidence that cancellation had been requested because of an agreement between it and the bank that, on cancellation, the surety would write a depository bond for the bank in like amount to cover State highway deposits. The latter bond was executed September 11th. The amount has been paid to the State. Before writing the latter bond, the surety had legal advice that the State could cancel the former.

The State treasurer returned the bonds for cancellation under the belief that he had a right to do so in proportion as the deposit decreased. In September he was making regular and heavy withdrawals from the bank. It will be noted that the Century and Maryland bonds were replaced by substitutes more than 30 days before the bank closed, while the Detroit company gave notice of cancellation and its bond and those of the Indemnity and Massachusetts companies were returned within such period.

October 7th, the depository bank closed and went into receivership, holding State deposits of about $600,000, derived from miscellaneous sources, such as taxation, license fees, donations, etc., representing moneys belonging to both general and various special funds of the State. It also held two deposits, carried separately, under the designation "Howard C. Lawrence, State treasurer, trustee for receivers of" designated banks in the sum of $40,000 and $18,000 respectively. These funds were in the hands of the State treasurer by virtue of 3 Comp. Laws 1929, § 11959, which requires receivers of banks to remit moneys collected by them to the State treasurer, who disburses them only on order of court. In the State treasurer's report of June 30th the State funds carried in the general account in the

bank were reported as secured by depository funds of defendants, but the receivership accounts were separately listed as unsecured.

Between November 21, 1930, and October 7, 1931, the State treasurer and his predecessor had drawn several checks against the deposit account amounting to over $4,000, which were not presented to the bank before it closed and were payable to residents of the State.

In circuit court, judgment was entered in favor of the State against the American, Union, Western, National, and Maryland, the latter on its $10,000 bond. Those defendants appealed. The other defendants had judgment of no liability. The State has appealed.

The State contends the cancellation and *pro rata* clauses are invalid; there exists no power to release or substitute securities once approved; and all the bonds are cumulative. It claims judgment against all defendants in the penal sums of their bonds, leaving those who pay to their remedy of contribution against the others.

Defendants agree with the State's position or oppose it as their interests lie. They further deny all liability on the ground the moneys deposited were not "surplus funds" covered by the statute. Other questions will be noted later.

At the outset, we must brush aside the stressed contention that public welfare demands that the State have such construction of the law and bonds as will certainly preserve its funds inviolate. The State is entitled to the full protection of the laws it enacts, but citizens dealing with it are entitled to like protection. There can be no virtue in a ruling which will favor the State at the expense of the legal rights of those who deal with it. "When a decision

is right, the government wins though it loses the suit.''

Are the bonds to be viewed as common-law contracts or as obligations into which the terms of the statute are woven? It is the general rule that existing law becomes part of a statutory bond, *i. e.*, one commanded or provided by statute, so that omitted conditions required by the law are read into the bond, and conditions not so required, which limit or restrict liability, are read out of it as surplusage. The rule governs not only the bonds of public officials but others. *Board of Education of Detroit* v. *Grant*, 107 Mich. 151; *August* v. *Collins*, 260 Mich. 232; *United States Fidelity & Guaranty Co.* v. *Poetker*, 180 Ind. 255 (102 N. E. 372, L. R. A. 1917B, 984); *State* v. *Nutter*, 44 W. Va. 385 (30 S. E. 67); L. R. A. 1917B, 990, note; 9 C. J. p. 34. It applies to depository bonds given to secure public funds. *Western Casualty & Guaranty Ins. Co.* v. *Board of Com'rs*, 60 Okla. 140 (159 Pac. 655, L. R. A. 1917B, 977); *Board of County Com'rs* v. *Security Bank of Duluth*, 75 Minn. 174 (77 N. W. 815); *Yeargain* v. *Board of Com'rs*, 90 Okla. 38 (215 Pac. 619); *Davis* v. *West Louisiana Bank*, 155 La. 245 (99 South. 207); *Dallas County* v. *Perry Nat'l Bank*, 205 Iowa, 672 (216 N. W. 119); *American Surety Co.* v. *Tarbutton* (Tex. Civ. App.), 248 S. W. 435; *Equitable Surety Co.* v. *Jackson Twp. Board of Finance*, 186 Ind. 650 (117 N. E. 860); *State* v. *Pederson*, 135 Wis. 31 (114 N. W. 828); *City of Pocatello* v. *Fargo*, 41 Idaho, 432 (242 Pac. 297); *Board of County Com'rs* v. *State Bank*, 64 Minn. 180 (66 N. W. 143); *Maryland Casualty Co.* v. *Pacific County*, 158 C. C. A. 171 (245 Fed. 831); *Village of Wyoming* v. *Citizens' Trust & Guaranty Co.*, 9 Ohio App. 225; *Henry County* v. *Salmon*, 201 Mo. 136 (100 S. W. 20).

Section 348 authorizes security by way of indemnity or like bonds. The bonds at bar were furnished thereunder. Consequently they are statutory bonds and must be given effect in harmony with the statute.

Does the provision for cancellation violate the rule? In spite of general language sometimes found in the cases, that the bond may contain no less and no more than the statute, it is not every provision of the bond not found in the statute which is void. Otherwise the definite penal sums in the bonds at bar must be stricken and each surety has unlimited liability. It is only those provisions which have the effect of limiting or restricting the liability imposed by statute which are surplusage. The statute must be consulted to appraise the controverted clauses. No case has been cited or found holding a cancellation clause in a public or private bond invalid.

The rule is invoked that a statutory bond cannot be canceled and the surety released, even by substitution of bonds, except under express authority of statute. *First Nat'l Bank of Paw Paw* v. *Moon,* 243 Mich. 124; *Central Banking & Security Co.* v. *United States Fidelity & Guaranty Co.,* 73 W. Va. 197 (80 S. E. 121, 51 L. R. A. [N. S.] 797); *Richter* v. *Estate of Leiby,* 101 Wis. 434 (77 N. W. 745); *Brehm* v. *United States Fidelity & Guaranty Co.,* 124 Wis. 339 (102 N. W. 36); *Fidelity & Deposit Co.* v. *Fleming,* 132 N. C. 332 (43 S. E. 899); *Leach* v. *Commercial Savings Bank,* 205 Iowa, 975 (213 N. W. 612); *Fidelity & Deposit Co.* v. *Callahan Bros.,* 98 Kan. 547 (158 Pac. 658); *Ohio Casualty Ins. Co.* v. *Board of Education,* 30 Ohio App. 549 (165 N. E. 857); 46 C. J. p. 1074. But this class of cases involved bonds required to be for stated official terms or for the performance of certain specific duties or undertakings, and none contained a cancellation clause.

On the other hand, a surety, bound for an indefinite and contingent liability, where the bond has no definite time to run, may end his future liability by giving reasonable notice of withdrawal.   50 C. J. p. 94; *Emery* v. *Baltz,* 94 N. Y. 408; *Ricketson* v. *Lizotte,* 90 Vt. 386 (98 Atl. 801); *LaRose* v. *Logansport Nat'l Bank,* 102 Ind. 332 (1 N. E. 805); *Reilly* v. *Dodge,* 131 N. Y. 153 (29 N. E. 1011); *Jeudevine* v. *Rose,* 36 Mich. 54.   The latter rule is applicable to depository bonds securing public funds.   The bonds at bar ran for an indefinite time, during the mutual will of the parties.   They were continuing obligations and were subject to cancellation on notice, even in the absence of a cancellation clause.   18 C. J. p. 589; *Yeargain* v. *Board of Com'rs, supra; Manitowoc County* v. *Truman,* 91 Wis. 1 (64 N. W. 307); *Snattinger* v. *City of Topeka,* 80 Kan. 341 (102 Pac. 508); *State Nat'l Bank* v. *Commonwealth,* 129 Ky. 637 (112 S. W. 678); *City of Pocatello* v. *Fargo, supra; City of Cheyenne* v. *Maryland Casualty Co.,* 13 Fed. (2d) 401.

The cancellation clause merely affirmed the legal rights of the parties and fixed, by express agreement, the time of notice which they deemed reasonable.   The clause in no way changes the statutory obligation.   The surety is not released from liability for breaches occurring before the effective date of cancellation.   In the meantime the State has had ample opportunity to withdraw the funds in case other acceptable bonds are not substituted by the depository.   Nor is the State remediless in case the treasurer should neglect such withdrawal.   It not only has a claim against the assets of the bank, but the State treasurer and his official sureties may be liable for the loss.   1 Comp. Laws 1929, § 349; *People* v. *Glazier,* 159 Mich. 528.   The cancellation clause is valid.

The validity of the *pro rata* clause and the authority to surrender and release bonds without formal cancellation also rest upon the statute. In *Southern Surety Co. v. County of Cochise,* 27 Ariz. 473 (233 Pac. 897), and *Board of County Com'rs v. Lake State Bank,* 122 Kan. 222, 124 Kan. 372 (252 Pac. 475, 260 Pac. 630), *pro rata* clauses were held invalid because they were in contravention of express terms of statute. In *Davis v. West Louisiana Bank, supra,* a subrogation clause was held invalid for the same reason. In *Leach v. Commercial Savings Bank,* 205 Iowa, 1154 (213 N. W. 517), upon a statute closely resembling ours, the court condemned the clause as inconsistent with the statute, but failed to set up the reasoning by which it reached the conclusion of inconsistency. The question remains one of construction of our statute without aid of the logic of other courts.

The form of bond was prepared and furnished by the State. It is substantially identical with the bond involved in *Banking Com'r v. Chelsea Savings Bank,* 161 Mich. 691, in which this court, although by way of *dictum,* said the *pro rata* clause was "effectual." That language has caused no change in the law by the legislature. On the contrary, the statute was affirmed by reference, in Act No. 40, Pub. Acts 1932 (1st Ex. Sess.). Nor has the form been changed by the State officers. Both State and sureties assumed the clause was valid. While not determinative of its legality, these facts are of weight, as an administrative interpretation of the law, at least to the extent of forbidding presumption against validity. The situation contains nothing which inspires a strained construction of the statute.

The statute permits, but does not require, indemnity or insurance bonds to secure deposits. The

officers may accept and approve, as they often have done, the pledge of public or private bonds or other securities. Both as to character and amount, the security is committed to the judgment of the three officers named. No standard is provided by statute. The determination of the officers, made in good faith, that the security is "good and ample" justifies the deposit. A mistake of judgment therein cannot affect the legality of the conditions of the depository bond.

Deposits are variable in time and amount. Some accounts are active and others inactive. The security continues until legally discharged. The variety of security which may be approved and the variety of changes which may occur during the life of the deposit afford ample reason for the failure of the legislature to surround the transaction with inelastic regulations and requirements. Of necessity, the officers must contract with the depository and its sureties, not only for the initial security, but with reference to changes which future conditions may render necessary or advisable. The statute puts no restriction upon the contract except that it shall provide "for the safe keeping and reimbursement of such surplus funds, whenever called for." Except in so far as the contract is inconsistent with such conditions, it is lawful.

The *pro rata* clause does not lessen the force of the statutory condition. No counsel has expressed a doubt of the right of a surety to limit its liability to the penal sum of its bonds. The *pro rata* clause is no other than a limitation of the amount of liability, not of its character. If it violates the statute, so does the establishment of a penal sum, and the surety on each bond is legally liable for the whole deposit. Nor can the *pro rata* clause result in loss

to the State if the deposit is secured by a sufficient aggregate of bonds executed by solvent sureties, both of which conditions are committed to the official authority and duty of the designated officers. We discover no inconsistency between the statute and the *pro rata* clause of the bond, and, therefore, hold the latter valid.

In terms, the statute requires the security to be approved before the bank is made the depository of State funds. It does not specifically authorize the treasurer or other officers afterward to demand and approve more or substituted security, in case a surety should withdraw or become insolvent or the security depreciate in value or it be desired to increase the deposit beyond the amount approved, or, for other reason, a change be advisable.

Nevertheless, if necessary, the authority to increase or substitute may be brought fairly within the words of the statute. On making a change of security, the treasurer, of course, could withdraw the deposit, the officers could approve the whole security as increased or substituted and put the money back into the bank as a new deposit. But physical withdrawal of the money is not necessary. Presentation and approval of security for funds already deposited is equivalent to withdrawal and redeposit and releases the former security from future liability and binds the new, if so intended. *Fidelity & Deposit Co.* v. *Wilkinson County,* 109 Miss. 879 (69 South. 865); *Pittsburg* v. *Rhodes,* 230 Pa. 397 (79 Atl. 634).

The approval of more or substituted security is, in effect, a reapproval of the whole security for the deposit and equivalent to establishing a new deposit. But we think the power to approve more security and permit substitution is implied from the purpose

of the act to provide protection for deposit of State funds. The power to obtain good and ample security carries the authority to maintain it. We hold that the statutory officers may approve the substitution of securities as well as more security for the deposit.

Assuming, but not deciding, that the three named officers may release security without substitution, may the State treasurer release it without consent and approval of the auditor general and secretary of State? The fact that the State treasurer and his official sureties are not released from liability for the deposit does not add to his powers under the statute at bar. If the security required for the deposit was solely for his benefit, it might reasonably be said he had such power. But the added security is provided also for the benefit of the State. The treasurer may not make the deposit without approval of the security by the three officers named. It would hardly be a reasonable construction of the statute that after the security is approved the treasurer may release all or part of it and thus leave the depository without the security approved as provided by law. See *Commonwealth* v. *Caldwell,* 224 Pa. 103 (73 Atl. 219). We hold that the treasurer alone cannot release security approved as required by statute.

Upon substitution of securities, what liability remains in the surety released? There is no claim that prior to the effective substitution the bank could not or would not have paid the deposit on demand. Where there is no substitution of depository bonds, it is held the surety continues liable for deposits made during the life of the bond, although not demanded until after its expiration, at least for a reasonable time. *American Surety Co.* v. *Tarbutton,*

*supra; Dallas County* v. *Perry Nat'l Bank, supra; School District* v. *Stomberg,* 61 N. D. 6 (236 N. W. 728); *United States Fidelity & Guaranty Co.* v. *City of Pensacola,* 68 Fla. 357 (67 South. 87, Ann. Cas. 1916B, 1236); *City of Cheyenne* v. *Maryland Casualty Co., supra.* And that the liability of the first bond continues although a subsequent bond be furnished which would also secure the deposit, in case the second bond is not approved as a substitution for the former. *Linz* v. *Eastland County* (Tex. Com. App.), 39 S. W. (2d) 599 (77 A. L. R. 1466).

But, in case bonds are accepted in lieu of others, when default does not occur before the substitution, the former sureties are released when the substitution becomes effective. *Fidelity & Deposit Co.* v. *Commonwealth Trust Co.,* 65 Misc. 88 (119 N. Y. Supp. 598); *Perkins* v. *State, ex rel. Roberson,* 130 Miss. 512 (94 South. 460); *New Liberty Common School District* v. *Merchants' & Planters' Bank* (Tex. Civ. App.), 273 S. W. 330; *Pittsburg* v. *Rhodes, supra.* The difference caused by substitution is remarked in *County of Emmons* v. *Kleppe,* 61 N. D. 536 (238 N. W. 651). Because the bonds given in lieu of the Century $250,000 and Maryland $60,000 obligations were approved by the statutory officers in substitution for them, the latter became wholly released from further liability.

Were the moneys on deposit "surplus funds" within the meaning of section 348 at bar? The statute was originally enacted as section 3 of Act No. 105, Laws 1855, entitled, "An act relative to the disposition of the surplus funds in the State treasury." Section 1 authorized and instructed the State treasurer to use moneys, "not otherwise appropriated or required to meet the ordinary and current expenses and disbursements already provided for

by law," to purchase then outstanding State indebtedness. Section 2 provided for the refunding of State debts. It is argued that "surplus funds" has a technical meaning and is defined by the quoted language above. Other statutes are cited in which the term has a similar meaning. But those statutes refer to the investment of funds not needed for the conduct of the government. The construction contended for would render the statute so restrictive, because of the small proportion of State moneys which remain after providing for appropriations and expenses, because of the uncertainty of ascertaining the surplus, and the lack of authority to determine when a surplus exists and its amount, that it ought not to be adopted if a reasonable interpretation is possible. Basically, "surplus" means what is not needed or is left over. It necessarily takes concrete significance from the context. *McConnell v. Allen,* 120 App. Div. 548 (105 N. Y. Supp. 16). It is obvious that funds may be differently rated as surplus for investment than for use. Funds not necessary to be kept on hand in cash for immediate use or ordinary demands may be called "surplus."

The practice of depositing public moneys in banks is as old as the State. Under the Revised Statutes of 1838, p. 29, § 10, the State treasurer was required, within three days after receipt, to deposit in banks designated by the legislature all moneys which came into his hands by virtue of his office. Later deposit evidently was made optional with the treasurer and secured only by his official bond, because the revision of 1846 does not contain statutes thereon. Apparently, however, the legislature decided that the treasurer's official bond was not sufficient security for bank deposits, because, by Acts Nos. 46 and 63, Laws of 1853, provision was made for security.

These acts were in essentially identical language with the statute at bar. They contained no reference to payment of State indebtedness. There is nothing about them to indicate that "surplus funds" meant moneys remaining after provision for appropriations and expenses. Standing alone, the acts of 1853 naturally would be construed as covering moneys not necessary to be kept on hand in cash for the ordinary needs of the treasurer's office.

In the act of 1855 the acts of 1853 were incorporated bodily as sections 3 and 4. Taking into account the origin of sections 3 and 4, it appears that, in the act of 1855, section 1 was not designed to define surplus funds as used in section 3, but rather that the legislature joined in one act different directions for the disposition of State funds under different conditions. Section 1 covers the surplus for investment, while section 3 covers the disposition of all surplus, i. e., funds above cash requirements for ordinary use. We hold the statute covers, and the bonds secure, the general deposit of the State treasurer.

Were the receivership deposits "funds belonging to the State," secured by the bonds? These funds were taken and held by the State treasurer by virtue of his office and under command of statute. The State thereby assumed responsibility for them. The statute provides for no separation of them from other State moneys nor different method of handling them. It does not suggest that the treasurer's liability for their safekeeping and disbursement is restricted to that of bailee, trustee, or other agent, or that it differs from his liability for other State funds. The treasurer held the funds as "belonging to the State," which is indebted to the receiver for them. The manner in which the treasurer kept the account or reported the moneys could not, of course,

have any effect upon their legal status. We think the answer must be in the affirmative. The authorities sustain our position. As among the State, depositary, and sureties, the fact that the State has taken possession of moneys pursuant to law is sufficient to constitute them State funds, although they may be held for a special purpose. *Chicago, M. & St. P. Ry.* v. *Public Utilities Commission,* 47 Idaho, 346 (275 Pac. 780); *Gilbert* v. *Isham,* 16 Conn. 525; *Sullivan* v. *City of Galveston* (Tex. Com. App.), 34 S. W. (2d) 808; *State, ex rel. School District,* v. *McGraw,* 74 Mont. 152 (240 Pac. 812); *Spratley* v. *Board of Com'rs,* 56 Kan. 272 (43 Pac. 232); *Myers* v. *Board of County Com'rs,* 60 Kan. 189 (56 Pac. 11); *contra, State* v. *Crook County Bank,* 104 Ore. 495 (208 Pac. 749).

Were the funds represented by outstanding checks State moneys? The liability for loss under the negotiable instruments law, through failure to present the checks within a reasonable time, does not alter the fact that a check is not an assignment of the fund and it remains the property of the depositor until lawfully withdrawn or segregated. See *Fidelity & Deposit Co.* v. *City of Cleburne* (C. C. A.), 296 Fed. 643.

What rate of interest governs the judgment? The relation between the bank and the State was that of debtor and creditor. Under the statute, the payment of interest by the depositary is a matter of contract with the State. Consequently interest cannot be treated differently than on any other contract. Elsewhere the rate of interest chargeable on default of payment of public funds under a depository bond is in dispute. *Fidelity & Deposit Co.* v. *Wilkinson County, supra,* holds the legal rate chargeable after default, while *Linz* v. *Eastland County, supra,* holds the contract rate chargeable until the date of judg-

ment. In this State the rule is settled that the contract rate of interest, if any, is chargeable before and after judgment. 3 Comp. Laws 1929, § 14555; *Warner* v. *Juif*, 38 Mich. 662; *Tousey* v. *Moore*, 79 Mich. 564.

The Massachusetts company contends the State is estopped from recovery on its bond because the surety wrote the $50,000 State highway bond in reliance on cancellation by the State treasurer and his statement of fact that the funds covered by it had been withdrawn. We need not decide the power of an officer to estop the State. The highway bond was written September 11th. The State treasurer did not make the statement of fact until September 14th. The State officers were not informed of the arrangement between the surety and the bank regarding the change of liability to highway funds. We find no basis for estoppel.

It is contended that actions at law would lie against defendants by the State, and, therefore, the case is not within the declaratory judgment statute. The contention disregards the relation of the sureties to each other. The liability of each defendant to the State depended upon the determination of many questions affecting the liability of all other defendants. The interests of the parties were variously aligned upon the different issues involved. The validity of the cancellation and *pro rata* clauses directly concerned all the sureties. Under some of the contentions the matter of contribution among defendants would be involved which could not be determined in suits by the State against individual defendants but would have to await subsequent events and actions between sureties. There could be no orderly determination of the final result to any defendant in a suit at law against it by the State

nor in any proceeding which did not join all sureties and adjudge their present and future rights and liabilities as to each other as well as to the State. The action was properly brought.

The judgment must be modified. One will be entered in favor of the State and against all defendants, except as to the Century and the Maryland $60,000 bond, in conformity with this opinion, and without costs.

McDONALD, C. J., and CLARK, POTTER, SHARPE, NORTH, WIEST, and BUTZEL, JJ., concurred.